## UNITED FIREMEN'S INS. CO. OF PHILADELPHIA v. JOSE RIVERA SOLER & CO., Inc.

### No. 2299.

Circuit Court of Appeals, First Circuit.

May 25, 1935.

Carroll G. Walter, of New York City (Henri Brown, of San Juan, P. R., on the brief), for appellant.

Martin Travieso, of San Juan, P. R., for appellee.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

MORTON, Circuit Judge.

This is an appeal by the defendant from a verdict and judgment for the plaintiff in an action on a fire insurance policy. The principal ground of appeal is the refusal of the District Judge to direct a verdict for the defendant, but certain other grounds are also urged. There was evidence of the following facts:

The plaintiff, Soler & Co., Inc., manufactured cloth into garments and other articles at its factory in a suburb of San Juan, P. R. The greater part of the work was sewing and embroidering. It was an establishment of substantial size employing many persons; its equipment comprised more than 100 machines of various kinds, electric motors, etc. At the time of the

fire there was, according to the plaintiff's contention, a large amount of cloth on hand, both silk and cotton, partly the property of the plaintiff and partly of other persons who had sent it there to be manufactured. The plaintiff did not own the building. The policy in question covered the stock of merchandise, the machinery, and the fixtures and furniture, each to a stated amount; the total being $30,000. It was dated February 9, 1932. On the night of March 12–13, 1932, the whole property was destroyed by fire. Formal proofs of loss were duly made, and, on the defendant's refusal to pay, the present action was brought.

There was no claim that the policy did not attach when issued. The defenses now relied upon rest upon breaches of what are commonly referred to as "conditions subsequent"; the real defense being that the plaintiff's claim was essentially fraudulent. The provisions of the policy relied on in defense are the so-called "Iron Safe" clause and condition 12. The "Iron Safe" clause reads as follows:

"1st. The Assured will take a complete itemized inventory of stock on hand at least once in each calendar year, and unless such inventory has been taken within twelve calendar months prior to the date of this policy one shall be taken in detail within thirty days of the issuance of this policy, or this policy shall be null and void from such date and upon demand of the Assured the unearned premium from such date shall be returned.

"2nd. The Assured will keep a set of books, which shall clearly and plainly present a *complete record of business transacted,* including all *purchases, sales* and *shipments,* both for cash and credit, from date of inventory as provided for in the first section of this clause, and during the continuance of this policy. (Italics supplied.)

"3rd. The Assured will keep such books and inventory, and also the last preceding inventory, if such has been taken, securely locked in a fireproof safe at night, and at all times, when the building mentioned in this policy is not actually open for business; or failing in this, the Assured shall keep such books and inventories in some place not exposed to a fire which would destroy the aforesaid building.

"In the event of failure to produce such set of books and inventories for the inspection of this Company, this policy shall become null and void."

Condition 12 provides:

"If the claim be in any respect fraudulent, or if any false declaration be made or used in support thereof or if any fraudulent means or devices are used by the Insured or anyone acting on his behalf; * * * all benefit under this policy shall be forfeited."

There are ten assignments of error, the first seven of which relate to the refusal of the District Judge to direct a verdict for the defendant, and the next two to rulings or refusals to rule with respect to damages. The last assignment appears not to be based on any ruling by the trial judge, and attempts to bring directly to this court the question whether the verdict and judgment are contrary to law because the amount of damages found by the jury is so much less than the amount of the plaintiff's claim as to prove conclusively that the claim involved fraud. There is no assignment of error with respect to any rulings of law on the portions of the policy relied on in defense. The law of the case was clearly and accurately explained to the jury in a manner which it would not be easy to improve upon.

■ As to the questions of evidence involved in the first seven assignments of error, the gist of these is that breach of certain conditions of the "Iron Safe" clause and of clause 12 was so clearly established by the evidence considered as a whole that the defendant was entitled to a directed verdict. The plaintiff offered the evidence of several witnesses, including an expert accountant, to the effect that its books and accounts were of such character as to afford a reasonably complete picture of its business activities, that they were honestly made and kept as required by the policy, and that the proofs of loss conformed to the books and were honest. While the defendant introduced a good deal of evidence to the contrary through witnesses who testified that the books and records were incomplete and insufficient, and not properly kept, and showed clear indications of having been fabricated, the questions were plainly for the jury to determine. These assignments of error cannot be sustained. Nor can it be said that the evidence as a whole so clearly established fraud on the part of the plaintiff that the defendant was entitled to a directed verdict on that ground.

■ As to the tenth assignment of error, the value of the destroyed property as claimed by the plaintiff was about $34,000. The jury's verdict was for $17,000. The defendant contends that the verdict, fixing the value of the property at only about one half of what was claimed in the proof of loss, established as a matter of law that there was fraudulent overvaluation by the plaintiff in the proof of loss. Obviously, this question could not arise until after the verdict; it amounts to a contention that the verdict in favor of the plaintiff was inconsistent and contradictory to the finding on damages. Questions of this character should be presented in the first instance to the trial judge. He has never passed upon this point. No ruling of his upon it was excepted to; no exception relating to it appears in the record. We cannot consider it.

■ The remaining assignments of error, the eighth and ninth, relate to the refusal of the trial judge to instruct the jury as to certain items in the plaintiff's claim, that there was no evidence of the value of them. The first of these items is "the cost of labor claimed in the complaint and in the proof of claim in the amount of $2,-524.56." The policy covered by its terms the expense to the plaintiff of labor which it had put upon goods of other parties which were sent to it to be manufactured and were destroyed in the fire. The defendant's contention is that there was no evidence as to the value of such labor. The expert accountant called by the plaintiff testified that this item appeared on its books, and he referred the item to certain vouchers which constituted part of the plaintiff's records. The proof of loss, which was sworn to, was put in evidence; it contained the item in question. The plaintiff's president, Mr. Soler, was examined and cross-examined with reference to this proof of claim and to various items in it, including this one, about which he testified at some length. The details which made up this amount were not presented, nor do they appear to have been specifically called for by the defendant during the trial. From the testimony of the accountant, they may have appeared on slips and other informal records which were put in evidence. The District Judge left the matter to the jury, saying that this amount was not recoverable, "unless the books introduced reasonably satisfy you that some definite amount was actually paid by the plaintiff for labor on this particular merchandise. If you find the evidence,—I do not recall,—but if you find it from the record then you can find only for such amount as the plaintiff actually paid for labor." We think this ruling was correct.

The ninth assignment of error relates to merchandise alleged to have been sold to the plaintiff by its president, Mr. Soler, and to the refusal of the trial judge to rule that there was no evidence from which its values could be found. It was a much controverted item as to which a good deal of evidence was introduced. We cannot say that there was not sufficient evidence before the jury to enable them to put a value on this merchandise if they found that the plaintiff was entitled to recover for it, which is entirely uncertain.

The judgment of the District Court is affirmed, with costs.